[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a one count complaint in which the plaintiff Colliers, Dow 
CT Page 13458-f Condon, Inc., seeks a commission alleged due under a contract entered into with Leonard J. Schwartz and K.F. Associates, LLP. The defendants plead in special defense that the agreement fails to comply with the provisions of C.G.S. § 20-325b. The defendant also plead a counterclaim in two counts. Count one alleges breach of contract. Count two alleges a violation of the Connecticut Unfair Trade Practices Act (CUTPA).
The facts are as follows. This case arises from the leasing of property known as nos. 631-635-637 Farmington Avenue in West Hartford, Connecticut (the Property). The Property is owned by K.F. Associates, LLP ("KF2"), a Limited Liability Partnership. The partners of K.F. Associates are Leonard J. Schwartz ("Schwartz"), Freda Schwartz, Sidney Silverman and Kathleen Silverman (the Schwartzes and the Silvermans are collectively the "Partners"). The Limited Liability Partnership was created in 1996. Prior to that date the Property was owned by a General Partnership called K.F. Associates ("KFI"). Title to the property remained in the earlier general partnership. The plaintiff has alleged that KF2 is the owner and the defendants have admitted that. The general partners of both entities were and are the Partners, and the record owner is an entity titled K.F. Associates.
In 1995, KF1 had entered into an agreement titled "Exclusive Right To Sell/Exchange Agreement" with the plaintiff then known as Dow Condon Colliers and now known as Colliers, Dow Condon ("Dow"). Prior to that the parties had entered into another agreement which dealt separately with the leasing of 1450 square feet of space. That agreement was titled "Exclusive Right To Lease Agreement." Subsequent to 1995 and prior to 1997 Dow changed its form and consolidated the agreements covering both sale and lease into one form.
John Tully is a licensed real estate agent with Dow since 1990 and the person with whom Schwartz has dealt at Dow since 1993.
At the time the 1995 agreement captioned "Exclusive Right To Sell/Exchange Agreement" was entered into, Imagineers was a tenant in the Property occupying 86% of its space. Schwartz asked Tully to approach Imagineers about buying the property.
In the letter transmitting the now captioned "Exclusive Right To Sell/Exchange/Lease Agreement" covering the period from September 1, 1997 through September 1, 1998, Tully stated he would approach Don Walsh who as the key tenant, is also the most logical buyer. At no time does Tully refer to any conversations he and Schwartz had about approaching CT Page 13458-g Imagineers to enter into a new rental lease. Tully relies on the 1997 Agreement as the basis for his claim that he was due a 5% fee of the total rental income. Tully admitted he did not have any notes referencing any discussion about leasing with Schwartz or for that matter with Walsh or Anderson of Imagineers.
Tully had discussions with Donald Walsh at Imagineers which culminated in a letter on February 27, 1998 from John Tully to Arthur Anderson and Donald Walsh in which Tully laid out two proposed acquisition plans for the Property.
Arthur Anderson wrote to Schwartz on March 3, 1998. In this letter Anderson referenced the proposals of Tully stating their best offer given the realities of the building would be $225,000. Anderson then went on to address a second alternative, which would be to continue to rent from Schwartz and stating that they would be wiling to sign a five-year lease with a five-year option to renew with rent fixed at $120,000 a year for the first five years and $130,000 a year for the second five-year period. Also Anderson would make the improvements referenced in his letter and provide landscaping and snow removal at no cost to Schwartz, A third alternative if Schwartz preferred to make the improvements would be a 5/5 lease at $135,000 and $145,000.
Between March 3, 1998 and August 26, 1998 a series of letters were exchanged between Schwartz and Anderson culminating in a lease agreement signed on August 26, 1998 between Tenant, Imagineers and Landlord, K.F. Associates.
On April 19, 1999, some eight months after the lease agreement was entered into Tully billed Schwartz for real estate brokerage services rendered in the lease transaction involving Imagineers. The amount requested was 5% of the rent which would be paid over the five year period of the lease or $42,750.80.
Schwartz referred the letter to his attorney. The instant action followed.
"It is a basic principle of contract law that in order to form a binding contract there must be an offer and acceptance based on a mutual understanding by the parties. (citations omitted)." Lyon v. A.D.Graphics, Inc., 14 Conn. App. 252, 254 (1988). "In the case of a bilateral contract, the acceptance of the offer need not be express but may be shown by any words or acts which indicate the offeree's assent to the proposal bargain. (citations omitted)." Bridgeport Pipe EngineeringCT Page 13458-hCo. v. DeMatteo Construction Co., 159 Conn. 242, 246 (1970). The defendants' position is that they did not enter into any agreement with Tully that he was to try to lease the Property. The defendants wanted the property sold not leased. Tully was told to approach Imagineers the current tenant to see if they would buy. Imagineers would not buy at the asking price because the building was in bad disrepair.
"In construing the intended meaning of terms in a contract, the conduct of the parties regarding their use is a proper consideration."Lar-Rob Bus Corporation v. Fairfield, 170 Conn. 397,407-408 (1976).
Tully's reliance on the fact that Schwartz forwarded him copies of communications covering discussions with Arthur Anderson of Imagineers and financial information as supporting his claim is misplaced. Tully was still under the 1997 listing agreement with K.F. Associates during the time Schwartz and Anderson were negotiating. It was perfectly natural that Schwartz and his accountant keep Tully informed as to what was going on with the Property. A Tenant in place with a five year lease would add to the marketability of the property.
Finally on August 3, 1998, four days after Schwartz signed the five year rental lease with Imagineers, Tully mailed Schwartz an extension of their 1997 "Exclusive Right To Sell/Exchange, Lease Agreement," noting that this confirmed their agreement to extend their 1997 agreement to 1999. Since Schwartz and Imagineers had just negotiated a five year rental lease covering 86% of the floor area and there was already a tenant in place in the remaining floor area, why would Schwartz want to extend an agreement to lease. He would not.
The 1995-1996 listing agreement focused on sale of the property for $500,000. The 1997 listing agreement carried the same sale price of $500,000 but added a lease rental price of $13.50. Where this lease rental price came from, how it was arrived at, and who authorized it are questions not addressed by the plaintiff. One would have expected some information along this line as a preliminary to arriving at a leasing arrangement for commercial property.
At no time does Tully identify any discussions Tully and schwartz had about a leasing arrangement for the Property. The inference to be drawn is that no discussions took place because there was no rental leasing agreement between Dow and Schwartz to talk about.
The presence of a rental lease figure in the 1997 lease is not inconsistent with a sale agreement since that would have been factored CT Page 13458-i into the value of the building in terms of its potential for generating income.
There was nothing in Tully's actions which would lead Schwartz to think that there was any expectation of a fee on the Imagineer's five year rental lease. Eight months went by before a bill was even presented by Tully.
On the facts found this court concludes there was no understanding between Dow, K.F. Associates and Schwartz that Dow had an agreement to lease the Property.
Since this court finds the plaintiff has failed to prove by a preponderance of the evidence its breach of contract claim we need not address the special defense raised by the defendants. Judgment may enter for the defendants Leonard J. Schwartz and K.F. Associates, LLP against the plaintiff Colliers Dow Condon, Inc. on the complaint.
As for the counterclaim of the defendants Schwartz and K.F. Associates, LLP, the Breach of Contract count and the Connecticut Unfair Trade Practices Act (CUTPA) count were not briefed. Absent authority for these claims and a discussion of what if any evidence supports them these claims are deemed abandoned.
Hennessey, J.